AUSTIN H. EATON *vs.* CATHERINE V. EATON.

Middlesex. January 10. — March 7, 1877.

The Gen. Sts. *c.* 107, § 12, providing that "no divorce shall be decreed for any cause, if the parties have never lived together as husband and wife in this state," do not apply where the parties, while legally married to each other, have their actual domicil within this Commonwealth, although there has been no cohabitation or matrimonial intercourse.

LIBEL for divorce, filed September 28, 1876, for the cause of desertion, alleging that the parties were lawfully married at Woburn on September 17, 1872; that they afterwards lived in this Commonwealth, the libellant at Woburn and at Boston, and the libellee at Winchester; and that the libellee, on September 17, 1872, wilfully deserted the libellant, and has ever since continued such desertion.

Hearing before *Lord,* J., who reported the case for the determination of the full court, in substance as follows:

In 1872, the parties lived at home with their respective parents, who were neighbors. On September 17, 1872, the libellant being then about twenty years of age, and the libellee about seventeen years of age, went to ride together in a buggy, from the house of the parents of the libellee. They drove to a neighboring town, their horse took fright, ran with them, and was stopped by being turned into the yard and against a barn belonging to a clergyman legally qualified to solemnize marriages.

The libellant then said this would be a good time to be married, the libellee in some mode assented, and they entered the house and were married by the clergyman, who furnished the witnesses. Neither party had intended marriage when they started on their ride, and the libellee was obliged to remain at the clergyman's house while the libellant drove back to the town of their residence for the certificate. After they were married, they immediately returned to their respective homes. On the following day the libellee went to her boarding-school, and the libellant, for six months after, visited her from time to time at her parents' house, when they, learning for the first time of the marriage, sent him away, forbidding him to come or see her again. At that time the libellant demanded of her that she should go and live with him, but she refused to have anything to do with him without the consent of her parents. Immediately after this, by consent of his parents, the libellant sent word to the libellee to come and live with him at his parents' house, where she would be comfortably provided for, but she refused. Several times after, and always whenever he saw her, he asked her to go with him and he would give her a home, but she always refused. He also wrote her several letters asking and offering the same, but she failed to answer them. After the marriage, she remained at home with her parents and refused to go to him, although the libellant could, and was always ready and anxious to, provide her a home that she might live with him.

The libellant testified that about two years before commencing this libel, the libellee began proceedings to nullify the marriage ; that he was served with notice, but did not appear to oppose, for the reason that he knew from her previous words and actions, as well as by the proceedings themselves, that she had fully determined never to be a wife to him ; that the court refused to decree the marriage a nullity ; that he had always supposed that the marriage was then nullified until within a short time before commencing this libel ; when learning otherwise, he visited her again and urged her to live with him, but she again refused. There was no evidence of cohabitation. The court was to draw any inference of fact which the presiding judge might have drawn.

*C. J. McIntire,* for the libellant.

No counsel appeared for the libellee.

COLT, J.   The parties having been legally married, it was the duty of the wife to dwell with her husband, to whom belonged the right to fix a suitable and proper place for their abode.

The libellee's refusal, for three consecutive years, to live with her husband amounted to desertion ; St. 1873, *c.* 371, § 2 ; and entitled the libellant to a divorce, unless he is defeated by the provisions of the Gen. Sts. *c.* 107, § 12, which declare that no divorce, with exceptions not necessary now to notice, " shall be decreed for any cause, if the parties have never lived together as husband and wife in this state."

But a true interpretation of this section does not require proof of matrimonial cohabitation, or matrimonial intercourse, as sometimes distinguished from it, in order to give this court jurisdiction ; and it is sufficient if the parties have both lived and had their actual domicil and place of residence within this Commonwealth, while legally sustaining the marriage relation towards each other.   To hold otherwise would be to declare that there could be a legal marriage within this Commonwealth between parties domiciled and continuing to reside here, and which no other tribunal would have jurisdiction to dissolve, which was not within the general provisions of our own divorce laws.

*Divorce granted.*